UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CALVIN T. NAKATA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBVIE INC., RICHARD A. GONZALEZ, ROBERT A. MICHAEL, JEFFREY R. STEWART, and MICHAEL E. SEVERINO,<br><br>Defendants. | Case No: 1:22−cv−1773<br><br>Judge: Harry D. Leinenweber |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ALLAN WOODRUFF FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF COUNSEL**

Allan Woodruff ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing the Movant as Lead Plaintiff for the Class of all purchasers of securities of AbbVie Inc. ("AbbVie" or the "Company") during the period from April 30, 2021, through August 31, 2021, inclusive (the "Class Period"); and

(b) approving Movant's selection of The Rosen Law Firm P.A. as Lead Counsel for the Class and the law firm of Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel for the Class.

1

**INTRODUCTION AND BACKGROUND**

This securities fraud class action was commenced on April 6, 2022 against Defendants AbbVie, Richard A. Gonzalez, Robert A. Michael, Jeffrey R. Stewart, and Michael E. Severino (collectively, "Defendants") asserting violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder. That same day, a PSLRA early notice was issued advising class members of the pendency of the action and the deadline for class members to seek lead plaintiff status. *See* Declaration of Carl V. Malmstrom, filed herewith ("Malmstrom Decl."), Ex. 1.

AbbVie is one of the world's largest pharmaceutical companies. Its biggest drug, Humira—an anti-inflammatory drug used to treat illnesses such as Crohn's disease, ulcerative colitis, rheumatoid arthritis ("RA"), and more—was, in 2021 (aside from COVID-19 vaccines), the world's best-selling prescription drug, with net revenue of more than $20 billion in 2021. Humira accounts for more than a third of AbbVie's net revenue. While patents have protected Humira's blockbuster profits for years, biosimilar drugs will be permitted to enter the market and compete directly with Humira beginning in 2023. As a result, Humira's sales are widely expected to decline significantly over the next several years—thereby undermining AbbVie's revenue and earnings. Accordingly, AbbVie's future revenue and earnings depend in large part on the Company's ability to develop new sources of revenue to offset reduced Humira sales. Rinvoq— an anti-inflammatory drug manufactured by AbbVie and used to treat RA and other diseases by inhibiting Janus kinase ("JAK") enzymes—was touted as one such drug. Rinvoq was initially approved in the United States to treat only moderate to severe RA. However, AbbVie was actively pursuing additional treatment indications and, in 2020, asked the U.S. Food and Drug Administration (the "FDA") to approve Rinvoq for the treatment of several other diseases, including psoriatic arthritis, ankylosing

spondylitis, and atopic dermatitis. As is relevant here, Rinvoq uses the same mechanism of action as other JAK inhibitor drugs, including Xeljanz and Xeljanz XR (collectively, "Xeljanz"), manufactured by Pfizer Inc. ("Pfizer"), and Olumiant, manufactured by Eli Lilly and Company ("Eli Lilly"). When the FDA approved Xeljanz in 2012 for the treatment of RA, it required an additional safety trial to evaluate Xeljanz's risk of certain serious adverse effects compared with non-JAK inhibitor anti-inflammatory drugs. Beginning in February 2019, the FDA repeatedly warned the public that the Xeljanz safety trial indicated that certain dosages of Xeljanz were associated with elevated risks of serious heart-related issues, cancer, and other adverse events. Notwithstanding the pharmacological similarities between Rinvoq and Xeljanz, during the Class Period, Defendants conditioned investors to view Rinvoq as far safer than Xeljanz while downplaying the likelihood that the FDA would take regulatory action against Rinvoq as a result of Xeljanz's problematic safety profile.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) safety concerns about Xeljanz extended to Rinvoq and other JAK inhibitors; (2) as a result, it was likely that the FDA would require additional safety warnings for Rinvoq and would delay the approval of additional treatment indications for Rinvoq; and (3) therefore, defendants' statements about the Company's business, operations, and prospects lacked a reasonable basis.

Then on June 25, 2021, AbbVie revealed that the FDA would not complete its review of several of the expanded treatment indications for Rinvoq by the end of June, as previously announced, due to its ongoing evaluation of safety concerns associated with Xeljanz. On this news,

the price of AbbVie common stock declined $1.76 per share, or approximately 1.5%, from a close of $114.74 per share on June 24, 2021, to close at $112.98 per share on June 25, 2021.

Then, on September 1, 2021, the FDA announced that final results from the Xeljanz safety trial established an increased risk of serious adverse events, even with low doses of Xeljanz. As a result, the FDA determined that it would require new and updated warnings for Xeljanz and Rinvoq because Rinvoq "share[s] similar mechanisms of action with Xeljanz" and "may have similar risks as seen in the Xeljanz safety trial." The FDA also indicated that it would further limit approved indications for Rinvoq as a result of these safety concerns.

On this news, the price of AbbVie common stock declined $8.51 per share, or more than 7%, from a close of $120.78 per share on August 31, 2021, to close at $112.27 per share on September 1, 2021. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth procedures for the selection of Lead Plaintiff in class actions brought under the Act. *See*, 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA directs courts to consider any motion to serve as Lead Plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B)(i) and (ii).

The PSLRA provides a "rebuttable presumption" that the most "adequate plaintiff" to serve as Lead Plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;

>> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that Movant is the most adequate plaintiff of the class and, therefore, should be appointed Lead Plaintiff.

### A. Movant's Motion is Timely

On April 6, 2022, pursuant to § 21D(a)(3)(A)(I) of the PSLRA, a notice was published announcing that a securities class action had been filed against AbbVie and certain of its executive officers, and advising purchasers of AbbVie securities that they had until June 6, 2022 to file a motion to be appointed as lead plaintiff. *See* Malmstrom Decl., Ex. 1.

Movant files the instant motion and submits herewith Movant's sworn certification attesting that he is willing to serve as a representative of the Class and willing to provide testimony at deposition and trial, if necessary. *See* Malmstrom Decl., Ex. 2. Movant therefore satisfies the first PSLRA requirement that a putative lead plaintiff either file a complaint or make a motion in response to a published notice.

### B. Movant Has The Largest Financial Interest in the Action

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses."

5

*Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period". *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $472 in connection with purchases of AbbVie securities. *See* Malmstrom Decl., Ex. 3. Movant is not aware of any other individual or group that has suffered greater losses in AbbVie securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

    **C.**    **Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification -- a *prima facie* showing that the Movant satisfies the requirements of Rule 23 is sufficient. At the

---

[1] *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

lead plaintiff stage, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in [Rule] 23(a)(3) and 23(a)(4), that is, typicality and adequacy." *Mayo v. Apropos Tech., Inc.,* 2002 WL 193393, at *3 (N.D. Ill. Feb. 7, 2002) (citing *Lax.*, 1997 WL 461036, at *6).

### 1. Movant's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See Mayo,* 2002 WL 193393 at *4; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (citations omitted). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Mayo,* 2002 WL 193393 at *4.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the federal securities laws by disseminating false and misleading statements concerning the business, operations and financial prospects of AbbVie. Movant, like all members of the Class, purchased AbbVie securities at prices artificially inflated by Defendants' misrepresentations and omissions, and was damaged thereby. Movant's interests are closely aligned with other Class members', and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has

obtained adequate counsel, and there is no conflict between a movant's claims and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case and has made this motion to be appointed lead plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as lead plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

>   (aa) will not fairly and adequately protect the interest of the class; or
>
>   (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78 u-4(a)(3)(b)(iii)(I).

The presumption that Movant is the most adequate lead plaintiff is not, therefore, subject to rebuttal. Movant has suffered substantial financial losses and believes he has the largest financial interest in this case of any timely lead plaintiff movant. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses defendants could raise against him that would render Movant inadequate to represent the Class. Accordingly, Movant is presumptively the most adequate plaintiff and should be appointed lead plaintiff for the Class. *See In re Cendant Corp.*, 264 F.3d at 268.

Further, Movant has approximately 40 years of investing experience and is a retired professional engineer. He holds a bachelor's degree of applied science.

8

### III. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel. Both firms are experienced in the area of securities litigation and class actions, and have successfully prosecuted securities litigations and securities fraud class actions on behalf of investors. *See* Malmstrom Decl., Exs. 4 & 5.

As a result of the firms' experience in litigation involving issues similar to those raised in this action, Movant's counsel have the skill and knowledge that will enable these two law firms to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel and Liaison Counsel, the members of the class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, the Movant respectfully requests the Court issue an Order: (a) appointing the Movant as Lead Plaintiff of the Class; (b) approving The Rosen Law Firm P.A. as Lead Counsel and Wolf Haldenstein Adler Freeman & Herz LLC as Liaison Counsel for the Class; and (c) granting such other relief as the Court may deem to be just and proper.

Dated: June 6, 2022                        Respectfully submitted,

/s/*Carl V. Malmstrom*
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Tel: (312) 984-0000
Fax: (312) 214-3110
Email: malmstrom@whafh.com

*[Proposed] Liaison Counsel for Plaintiff*
*And the Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Laurence M. Rosen
275 Madison Avenue, 40th Floor
New York, New York 10118
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Plaintiff*
*And the Class*

## CERTIFICATE OF SERVICE

I, Carl V. Malmstrom, one of the attorneys for the movant, hereby certify that on June 6, 2022, service of the foregoing ***Memorandum of Law in Support of Motion of Allan Woodruff for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Counsel*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

/s/ *Carl V. Malmstrom*
Carl V. Malmstrom